IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DALE L. TACKETT, | ) | CASE NO. 1:14CV788 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| RICHLAND CORRECTIONAL | ) | |
| INSTITUTION WARDEN, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Dale L. Tackett, ("Petitioner" or "Tackett") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Tackett is detained at the Richland Correctional Institution, having been found guilty by an Ashtabula County, Ohio, Court of Common Pleas jury of two counts of operating a vehicle while under the influence of alcohol.  Doc. 6-2, pp. 15-16.[1]  *State v.Tackett*, No. 2011 CR 159 (Ashtabula Cty. Common Pleas Ct. filed February 16, 2012).  The trial court merged the two counts and imposed a sentence of one year in prison for operating a vehicle under the influence and two years for the specification that Tackett was previously convicted of five or more offenses of operating a vehicle under the influence within twenty years of the recent offense, to be served concurrently, for an aggregate sentence of three years in prison.  Doc. 6-2, p. 144.

On April 11, 2014, Tackett filed his petition for writ of habeas corpus setting forth two grounds for relief.  Doc. 1, pp. 5-6.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Ground One fails on the merits and Ground Two is procedurally defaulted.  Thus, the

---

[1] Doc. page citations are to ECF Doc. page numbers.

1

undersigned recommends that Tackett's Petition for a Writ of Habeas Corpus (Doc. 1) be **DENIED in part** and **DISMISSED in part**.[2]

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009). The Ashtabula County Court of Appeals, Eleventh Appellate District of Ohio, set forth the facts underlying Tackett's conviction as follows:[3]

> {¶ 3} On March 26, 2011, Patrolman Chris Defina ("Defina") of the Ashtabula City Police Department was on routine patrol in the area of Main Avenue and West 58th Street in the City of Ashtabula, Ohio, when he observed appellant passing a vehicle in a no passing zone at a high rate of speed. When appellant turned into a Circle K convenience store, Defina activated his overhead lights to initiate a traffic stop. Defina approached appellant's vehicle and observed that appellant's face was flushed and that his eyes were watery and glossy. It also appeared that appellant was unable to roll down the window. Defina instructed appellant to open the door, and when appellant did so, Defina smelled the odor of alcohol emanating from appellant's person. After instructing appellant to exit the vehicle, Defina observed numerous open containers in the vehicle. Further, appellant's speech was slurred such that he could not be understood.
>
> {¶ 4} Defina asked appellant to perform field sobriety tests, but appellant was not able to adequately complete them. Defina placed appellant under arrest for OVI and transported him to the Ashtabula City Police Station where he became argumentative and refused to take a breath test. Appellant was then transported to the Ashtabula County Medical Center for a blood test. While at the hospital, appellant behaved erratically, flailed around, and refused to lay still for the blood test. As a result of appellant's uncooperative behavior, four officers held him down in order for the nurse to draw his blood sample. Appellant's blood alcohol level was 0.232.

*State v. Tackett*, 2013 WL 5450560, at *1 (Ohio Ct. App. Sept. 30, 2013).

---

[2] The ground in the petition that is procedurally defaulted results in a dismissal; the ground in the petition that is addressed on the merits results in a denial.

[3] The facts are taken from the Eleventh District Court of Appeals' decision *State v. Tackett,* 2013WL 5450560 (Oh. Ct. App. Sept. 30, 2013). Tackett has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

## II. Procedural Background

### A. State Conviction

On June 16, 2011, an Ashtabula County Grand Jury indicted Tackett on two counts of operating a vehicle while under the influence of alcohol ("OVI"), R.C. 4511.19(A)(1)(a) and R.C.4511.19(G)(1)(d), and one count of aggravated menacing, R.C. 2903.21(A).  Doc. 6-2, pp. 2-3.  Both OVI counts contained a specification that Tackett had previously been convicted of five or more offenses of operating a motor vehicle while under the influence of alcohol within 20 years of the current offenses.  Doc. 6-2, pp. 2-3.  Tackett, through counsel, pleaded not guilty to the charges.  Doc. 6-2, p. 7.  The state dismissed the aggravated menacing count and the case proceeded to a jury trial on the two OVI counts.  Doc. 6-2, pp. 10-14.  The jury found Tackett guilty on both OVI counts and judgment was entered on February 16, 2012.  Doc. 6-2, pp. 11-16.

On March 20, 2012, the trial court merged the OVI counts and sentenced Tackett to 120 days in prison for the OVI and two years on the specification, to be served consecutively, for an aggregate sentence of two years and 120 days in prison.  Doc. 6-2, pp. 18-19.

### B. Direct Appeal

On April 20, 2012, Tackett, through counsel, filed a notice of appeal with the Eleventh District Court of Appeals.  Doc. 6-2, p. 21.  In his brief, he presented three assignments of error:

1. The trial court erred when it sentenced Tackett to both a 120 prison sentence on the underlying OVI, and a mandatory prison term of two years on the specification.

   *Issue Presented for Review and Argument*: Whether the trial court erred when it sentenced Tackett to both 120 in prison on the underlying offense, and a mandatory prison term of two years on the specification?

2. The conviction for the specification that Tackett had previously been convicted of five or more similar OVI offenses within twenty years was not supported by sufficient evidence.

   *Issue Presented for Review and Argument*: Whether the trial court erred when it found that State's Exhibit "A" constituted sufficient evidence of [ ] Tackett's prior

>convictions, and whether the trial court erred when it overruled Tackett's Motion for Acquittal pursuant to Criminal Rule 29?

>3. Tackett was denied his right to the effective assistance of counsel guaranteed to him by Art 1, Sec 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

>*First Issue Presented for Review and Argument*: Whether trial counsel was ineffective for not objecting to the introduction of other convictions which were contained in the previous documents convicting Tackett of OVI? (See State's Exhibit "A" and "C").

>*Second Issue Presented for Review and Argument*: Whether trial counsel was ineffective for failing to pursue a Motion to Suppress the results of the blood test when they were forcibly extracted from Tackett.

Doc. 6-2, pp. 31-33. On September 30, 2013, the Ohio Court of Appeals affirmed Tackett's conviction and the sentence for the specification; it reversed and remanded the case for resentencing on the OVI conviction. Doc. 6-2, pp. 83-97.

### C. Ohio Supreme Court Appeal

On October 31, 2013, Tackett, through counsel, timely appealed to the Ohio Supreme Court. Doc. 6-2, p. 99. He presented three propositions of law:

>1. When a mandatory prison term is imposed for a specification under R.C. 2941.1413, the sentencing range for the sentence on the underlying offense is six-to-thirty months. R.C. 4511.19(G)(1)(d)(i).

>2. When an automatic license suspension is guaranteed and significant evidence of impairment exists to support a drunk-driving conviction, it is unreasonable for multiple police officers to use force to secure a blood draw to support an additional drunk-driving charge on an alternate theory. Fourth and Fourteenth Amendments, United States Constitution; Section 14, Article I, Ohio Constitution.

>3. Trial counsel is constitutionally ineffective for failing to move to suppress an unreasonable blood draw. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution.

Doc. 6-2, p. 103. On January 22, 2014, the Ohio Supreme Court declined to accept jurisdiction. Doc. 6-2, p. 142.

### D. Resentencing and Post-Conviction Relief

On March 7, 2014, the trial court held a resentencing hearing in accordance with the state Court of Appeals' remand order. Doc. 6-2, p. 143. The court sentenced Tackett to one year in prison on the OVI count and two years for the specification, to be served consecutively, for an aggregate sentence of three years in prison. Doc. 6-2, pp. 144-145.

On April 1, 2014, Tackett, *pro se*, filed a motion for judicial release in the trial court. Doc. 6-2, p. 148. The court held a hearing on May 30, 2013. Doc. 6-2, p. 152. In an order dated June 4, 2013, the court denied Tackett's motion. Doc. 6-2, p. 152.

On April 18, 2014, Tackett, *pro se*, filed a motion to vacate his conviction and sentence in the trial court. Doc. 6-2, p. 155. On June 4, 2014, the court overruled the motion. Doc. 6-2, p. 159.

On June 24 and 17, 2014, Tackett, *pro se*, appealed both these trial court orders. Doc. 6-2, pp. 160, 172. On July 3, 2014, the Ohio Court of Appeals, *sua sponte*, consolidated his appeals. Doc. 6-2, p. 183. As of the date of Respondent's filing of the case record, Tackett's appeal was still pending. Doc. 6, p. 7.

### E. Federal Habeas Petition

On April 11, 2014, Tackett, *pro se*, filed a petition for a writ of habeas corpus. He listed the following two grounds for relief:

> **Ground One:** Trial Counsel ineffective assistance for failure to file a Motion to Suppress the blood draw test results.
>
> **Supporting Facts**: Police used unreasonable and excessive force to take the blood draw in this case. No warrant was used, and no exigent circumstances existed to not obtain a warrant. Trial counsel failed to file a suppression motion when state precedent provided the basis for this motion and suppression of this evidence. Counsel's error violated petitioner's constitutional rights under the 4th, 5th, 6th, 14th Amendment[]s.

5

>**Ground Two**: Petitioner's blood draw was unlawful because police didn't have a warrant, and no exigent circumstances existed.
>
>**Supporting Facts**: The police violated petitioner's constitutional rights under the 4th, and 14th Amendment[]s when police forcefully secured a blood draw without a warrant, and when no exigent circumstances existed. Violated well settled precedent under, Missouri v. McNeely, 569 U.S.___ , 133 S.Ct. 1552, 1558, 185 L.Ed.2d 693.

Doc. 1, pp. 5-6. On August 22, 2014, Respondent filed a Return of Writ. Doc. 6. Respondent argues that Ground One fails on the merits and is procedurally defaulted and Ground Two is procedurally defaulted and not cognizable. Doc. 6, pp. 7-26. On September 19, 2014, Tackett filed a Traverse to the return of writ. Doc. 9.

### III. Law

**A. Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Tackett's habeas petition because he filed it after the effective date of the AEDPA. 28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). Under the AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court

6

remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.** Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to

7

petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review**. In order to obtain habeas relief under §2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of clearly established federal law as determined by the United States

8

Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved a reasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also*

9

*Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harington*, 562 U.S. at 786-787.

### IV. Claim Analysis

#### A. Claims Overview

Tackett sets forth two grounds for relief in his petition. Doc. 1, pp. 5-6. Respondent argues that Ground One fails on the merits, Ground Two is not cognizable, and that both grounds are procedurally defaulted. Doc. 6, pp. 7-27. For the reasons that follow, the undersigned concludes that Ground One fails on the merits and Ground Two is procedurally defaulted.

#### B. Ground One fails on the merits

In Ground One, Tackett argues that his trial counsel was ineffective for failing to file a motion to suppress the results of his blood test. Doc. 1, pp. 20-21. He asserts that the police used excessive force to obtain his blood test in violation of his constitutional rights; it was objectively unreasonable for trial counsel not to move to suppress the results of his blood test; and that he was prejudiced as a result. Doc. 1, p. 25.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel in the context of the failure to file a motion to suppress evidence. *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

> In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S., at 688, 104 S.Ct., at 2064, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*., at 694, 104 S.Ct., at 2068. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

10

*Id*. at 375.

> The Ohio Court of Appeals considered Tackett's ineffective assistance of counsel claim:
>
> {¶ 23} Pursuant to appellant's third assignment of error, he raises two issues. First, he contends that he was denied his right to effective assistance of counsel when trial counsel allowed the introduction into evidence of non-OVI convictions that were contained in the documents convicting appellant of OVI. Second, he argues trial counsel was ineffective for failing to pursue a motion to suppress the result of a blood test that was forcibly withdrawn.
>
> {¶ 24} In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court developed a two-part test to determine whether counsel's [sic] was ineffective: (1) that counsel's actions were outside the wide range of professionally competent assistance, and (2) that the defendant was prejudiced as a result of counsel action. To establish prejudice, the defendant must show a reasonable probability that the outcome would have been different. *Id*. at 694.
>
> * * *
>
> {¶ 27} Turning to the second issue under appellant's third assignment of error, appellant argues that a motion to suppress appellant's blood test results would have likely been granted because appellant was restrained with excessive force by several officers when his blood sample was drawn in violation of his rights under both the Ohio and United States Constitution.
>
> {¶ 28} Ohio's implied consent statute, R.C. 4511.191(A)(5)(a), provides that a person arrested for one of the OVI offenses listed in that section must submit to a blood alcohol level test if requested by a law enforcement officer. If that person refuses to submit to this test, the law enforcement officer who made the request may resort to "whatever reasonable means are necessary" to ensure submission to the test. R.C. 4511.191(A)(5)(b). Here, when appellant refused to submit to either a breath or blood test, it took four officers to hold him down because he was flailing around and refused to lay still. Defina grabbed a pressure point on appellant's neck to hold him on the table, while Patrolman Hoskin held appellant's diaphragm. Patrolman Howell and Patrolman Burns held appellant's legs.
>
> {¶ 29} In support of his argument that he was restrained with excessive force, appellant relies on the Fifth [sic] Appellate District case of *State v. Sisler*, 114 Ohio App.3d 337, 683 N.E.2d 106 (2nd Dist.1995) wherein the court discussed the issue of forcibly extracting blood samples in an OVI case with an uncooperative defendant. In *Sisler*, the court found that the defendant's due process rights were violated, even though he consented to withdrawal of blood, because he was shackled to the hospital bed and held down by six persons while another person withdrew his blood after several failed attempts. *Id*. at 345, 683 N.E.2d 106. The Second Appellate District determined that such

11

methods offended "a fundamental sense of justice, notwithstanding the fact that they were also prompted by Sisler's violent resistance to the efforts of the state's officers." *Id*. at 344, 683 N.E.2d 106.

{¶ 30} We note that *Sisler* was predicated on the landmark United Supreme Court case of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which stands as the seminal case involving the forced extraction of blood from an accused and provides the framework for most judicial determinations on this topic. In *Schmerber*, the Court held that blood alcohol evidence could be taken without a DUI suspect's consent and without a warrant when probable cause and exigent circumstances existed (rapid elimination of blood alcohol content by natural bodily functions). *Id*. at 770–771. However, the *Schmerber* Court emphasized that a blood draw remains subject to Fourth Amendment standards of reasonableness. *Id*. at 768. In particular, the procedure must be conducted without unreasonable force and in a medically acceptable manner. *Id*. at 771.

{¶ 31} Here, appellant does not contest that probable cause and exigent circumstances existed, or that his blood was not drawn in a medically acceptable manner. Rather, he contends that the actions of the officers undertaken to withdraw his blood constituted excessive force and violated his right to due process.

{¶ 32} In a case that followed *Schmerber*, *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court clarified that claims of excessive force, such as here, are analyzed under a balancing test to determine whether the use of force in a given case is objectively reasonable. *Id*. at 395. In such cases, the nature and degree of the intrusion are balanced against the governmental interest in securing the evidence. *Id*. at 396. Unfortunately, "the 'test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.' " *Id*. quoting *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Specifically, the *Graham* Court explained that:

{¶ 33} "[P]roper application [of the balancing test] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

{¶ 34} "When applying the objectively reasonable standard, the court should consider, among other circumstances, (a) whether the officer initiated the physical violence, (b) whether the accused was combative, uncooperative, or unruly, (c) whether the accused's conduct is an immediate threat to the officer's safety or the safety of others, (d) the size and physical strength of the accused, (e) the seriousness of the crime that the accused committed, (f) whether the officer refused the accused's reasonable request to submit to a different form of measuring the blood-alcohol level, and (g) whether the officer responded to the accused's combative resistance with inappropriate force." *State v. Mason*, Tenn.App. No. 02C–01–9310–CC–00233, 1996 Tenn. Crim App. LEXIS 163, 1996 WL 111200 (1996), *37.

{¶ 35} In light of the lack of uniformity and precision regarding the application of Fourth Amendment standards in this area, a review of some of the decisions from other jurisdictions regarding the use of force to obtain a blood specimen is helpful in determining whether the force in the instant case was objectively reasonable.

{¶ 36} In *State v. Ravotto*, 169 N.J. 227, 777 A.2d 301 (2001), the New Jersey Supreme Court held that the police used unreasonable force in obtaining the defendant's blood sample where the defendant was willing to take a breath test, was subject to mechanical restraints, voiced that he was terrified of needles, and shouted and flailed violently as the nurse drew his blood. *Id*. at 241, 777 A.2d 301. In *People v. Kraft*, 3 Cal.App.3d 890, 84 Cal.Rptr. 280 (1970), one of the officers struck the defendant on the side of his cheek with a closed fist in an allegedly defensive move, then the officers placed the accused on the floor face down, applied a scissor lock on his legs, and held his arm up. The California court held that the officers used excessive force and exceeded the limits of permissible police activity. *Id*. at 900, 84 Cal.Rptr. 280.

{¶ 37} To the contrary, in *McCann v. State*, 588 A.2d 1100 (Del.1991), each time a blood draw was attempted, the defendant withdrew his arm. After the defendant attempted to bite the officer, the office applied a stun gun to the defendant's arm. The Delaware court held that the force used was reasonable and not excessive. *Id*. at 1102. In *Burns v. State*, 807 S.W.2d 878 (Tex.Ct.App.1991), two police officers wrestled the accused to the floor of the emergency room, allowing the lab technician to obtain a blood specimen. The Texas court, noting that the accused initiated the violence, held that he was merely restrained after struggling to avoid the blood draw and that the police officers did not overreact. *Id*. at 883. In *State v. Krause*, 168 Wis.2d 578, 484 N.W.2d 347 (Wis.Ct.App.1992), the accused shouted vulgarities, spit at the officers, and was generally unruly. Three officers placed a pillow case over his head, tied his feet, and held his arm while a medical technician obtained the blood specimen. This restraint caused the needle to injure the accused's arm. The accused then bit his tongue and broke a tooth. Nevertheless, the Wisconsin court held that the force used to restrain the accused was "reasonable in light of the totality of the circumstances facing the officers * * *." *Id*. at 352.

{¶ 38} In a case very similar to the instant matter, *Carleton v. People*, 170 Cal.App.3d 1182, 216 Cal.Rptr. 890 (1985), the defendant aggressively resisted the police officers by refusing to extend his arm. Because of the defendant's resistance, it was necessary for one of the police officers to hold him in a "carotid-restraint position, but without carotid unconsciousness" while another officer held the defendant's left arm, another his right arm, and one deputy held each leg. The California court held that the police acted reasonably and that the degree of force used was not excessive. *Id*. at 1191, 216 Cal.Rptr. 890. Notable in the court's analysis was that none of the officers struck or physically abused the defendant. *Id*. at 1190, 216 Cal.Rptr. 890. In another similar case, *State v. Worthington,* 138 Idaho 470, 65 P.3d 211 (Ida.App.2002), the defendant was "very combative," required three police officers and two nurses to hold him down, and was restrained with a belly restraint. The Court of Appeals of Idaho held that the force used by police to extract defendant's blood was reasonable and necessary and did not violate constitutional standards. *Id*. at 474, 65 P.3d 211.

13

> {¶ 39} In view of the foregoing, we find that the force used by the officers in this case was objectively reasonable given the unruly and uncooperative conduct of the appellant. Appellant was unwilling to take a breath test, refused to lay down for the blood test, attempted to stand when the nurse came to draw his blood, and was flailing around. The facts support the conclusion that the officers used only the appropriate force necessary to restrain appellant, obtain the blood specimen, and to protect their own and appellant's safety. The police used force necessary to restrain an actively resisting defendant and did not strike or physically abuse him in any manner.
>
> {¶ 40} Accordingly, based on the foregoing, we conclude that trial counsel was not ineffective for failing to pursue a motion to suppress the results of appellant's blood draw, since the blood specimen was not obtained through the use of excessive force. Thus, the trial court would not likely have granted a motion to suppress appellant's blood sample. Appellant's third assignment of error is without merit and is hereby overruled.

*Tackett*, 2013 WL5450560, at * 5-8.

The Ohio Court of Appeals' decision was not contrary to, and did not involve an unreasonable application of, the ineffective assistance of counsel standards enunciated in *Strickland*. The state Court of Appeals reasoned that a motion to suppress Tackett's blood draw would not have been successful based on a finding that Tackett's Fourth Amendment rights were not violated because the police did not use excessive force. In doing so, the court discussed and reasonably applied the relevant Supreme Court cases, *Schmerber* and *Graham*, as well as *Strickland*. See 28 U.S.C. § 2254(d)(1).

Tackett argues that, pursuant to *State v. Shisler*, 683 N.E.2d 106 (Ohio Ct. App. 1995), there was "a reasonable probability the blood test results would have been suppressed." Doc. 9, p. 12. The Ohio Court of Appeals considered *Shisler* and found it distinguishable from the facts and circumstances in Tackett's case, following the dictates of Supreme Court precedent. *See Graham*, 490 U.S. at 397 ("the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."); *Schmerber*, 384 U.S. at 768 (a court considers "whether the means and procedures employed in taking [a defendant's]

14

blood respected relevant Fourth Amendment standards of reasonableness."); *Tackett*, 2013 WL5450560, at * 5-8 (the police officer's acts were objectively reasonable considering the totality of the circumstances). Moreover, *Shisler* was a Second District, Ohio Court of Appeals case and was not binding on the trial court or on the Ohio Court of Appeals that decided Tackett's case, those courts being within the Eleventh District. Nor is *Shisler* the operative precedent for this federal Court on habeas review. Tackett cannot prove that his Fourth Amendment claim is meritorious, *see Kimmelman*, 477 U.S. at 375, and that the Ohio Court of Appeals' decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" *see Harrington*, 562 U.S. at 786-787.

      Tackett contends that the Ohio Court of Appeals committed error because it "improperly conflated" the prejudice prong of *Strickland* when it concluded it was unlikely that the trial court would have granted a motion to suppress the evidence of his blood test. Doc. 1, p. 26. He submits that the correct standard is whether the outcome of the entire proceeding would have been different. Doc. 1, pp. 26-27. First, because the Ohio Court of Appeals determined that Tackett's counsel was not ineffective, it was not required to consider the prejudice prong at all. *See Strickland*, 466 US at 697 (if a petitioner cannot satisfy one prong of the ineffective counsel test it need not consider the other); *Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001) (same). Second, Tackett admits that there was sufficient evidence without the blood test to convict him (Docs. 1, p. 21; 9, p. 12), and his admission is supported by the record. *See Tackett*, 2013 WL 5450560, at *1 (when stopped by police, Tackett had a flushed face, glossy and watery eyes, smelled of alcohol, appeared to be unable to open his car window, had numerous open containers in his car, had slurred speech, could not complete a field sobriety test, and refused to take a breathalyzer test); *State v. Shaffer*, 2004 WL 144246, at *3 (11th Dist. Ohio Ct. App. Jan. 23,

15

2004) (a conviction of driving under the influence can be secured based on the following evidence: slurred speech, glassy bloodshot eyes, odor of alcohol, uncoordinated motor movements, failed field sobriety test, refusal to take a breathalyzer test); *State v. Lewis*, 2010 WL3528923, at *8 (11th Dist. Ohio Ct. App. Sept. 10, 2010).  It cannot be said, therefore, that there is a reasonable probability that, without Tackett's blood test, the jury would not have found him guilty of driving under the influence.  See *Kimmelman*, 477 U.S. at 375.

To the extent that Ground One alleges that trial counsel was ineffective for failing to file a motion to suppress based on the subsequently decided United States Supreme Court decision *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), described in further detail below, such an allegation has no merit.  See *Strickland v. Washington*, 466 U.S. at 690 (a federal habeas court considers the reasonableness of counsel's actions "as of the time of counsel's conduct"); *Berkley v. Miller*, 2014 WL 2042249, at *13 (C.D.Cal. April 2, 2014) (habeas petition alleging ineffective assistance of trial counsel for failing to file a motion to suppress evidence of a blood draw based on the Supreme Court's later decision in *McNeely* fails; "the adequacy of defense counsel's performance must be assessed under the law in effect at the time.").

Accordingly, Ground One fails on the merits.

### C.  Ground Two is procedurally defaulted

In Ground Two, Tackett argues that his "blood draw was unlawful because police didn't have a warrant, and no exigent circumstances existed" in violation of his Fourth Amendment rights.  Doc. 1, pp. 6, 28-34.  He explains that this claim is based on the recent United States Supreme Court decision *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), issued prior to the Ohio Court of Appeals' decision in his case.  Doc. 1, p. 28.  He asserts that *McNeely* held, "the natural dissipation of alcohol in the blood-stream does not establish a per-se exigency that suffices on its own to justify an exception to the Fourth Amendment's warrant requirement for nonconsensual

16

blood testing in all drunk driving cases," contrary to the Court's prior decision in *Schmerber*. Doc. 1, pp. 28-29. Because the police officers did not have a warrant to obtain a blood draw from Tackett and the police identified no exigent circumstances permitting them to take his blood without a warrant, Tackett argues, his Fourth Amendment rights were violated based on the rule established in *McNeely*. Doc. 1, pp. 28-29.

Ground Two is procedurally defaulted because Tackett did not present this argument to the Ohio state courts as he is required to do. *See Williams*, 460 F.3d at 806. To be sure, as Tackett asserts, the United States Supreme Court's *McNeely* decision had not been issued at the time he filed his brief on direct appeal to the Ohio Court of Appeals. However, *McNeely* was decided five months before the Ohio Court of Appeals rendered it decision in Tackett's case. *See McNeely*, 133 S.Ct. 1552 (decided April 17, 2013); Doc. 6-2, p. 83 (Ohio Court of Appeals' decision filed September 30, 2013). Tackett did not file a supplemental or amended brief asserting a Fourth Amendment challenge based on the rule announced in *McNeely*.

Moreover, although Tackett raised the *McNeely* decision in his brief to the Ohio Supreme Court, he cited *McNeely* to support his argument that the police used unreasonable and excessive force against him when they obtained his blood. *See* Doc. 6-2, pp. 108-110. In his brief in support of jurisdiction to the Ohio Supreme Court, Tackett cited *McNeely* only for the proposition that blood draws raise Fourth Amendment issues and that courts determine the reasonableness of a search by considering the totality of the circumstances. Doc. 6-2, p. 108. He went on to argue that the police used excessive force against him when four officers held him down to obtain his blood for testing despite other sufficient evidence available to convict him, citing *Sisler*, *Schmerber*, and *Graham*. Doc. 6-2, pp. 108-110. Tackett did not allege that his Fourth Amendment rights were violated because the police drew his blood without a warrant and there were no exigent circumstances present that would permit them to do so. He presents this

17

legal and factual argument for the first time in his federal habeas petition. Thus, his claim is procedurally defaulted. *Williams*, 460 F.3d at 806 (a claim is procedurally defaulted when the petitioner failed to present "both the legal and factual basis for his or her claim" to the state courts).

Ground Two, therefore, is procedurally defaulted.

### V. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas petition be **DENIED in part** and **DISMISSED in part** because Ground One fails on the merits and Ground Two is procedurally defaulted.

Dated: August 28, 2015

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).